UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

RICHELLE JONES,

          Plaintiff,

          Case No. 20-CV-12006

   vs.

          HON. GEORGE CARAM STEEH

LOUIS DEJOY, Postmaster
General of the United
States Postal Service,

          Defendant.
_____/

OPINION AND ORDER GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT (ECF No. 18)

Plaintiff Richelle Jones brings this employment discrimination case against her employer, the United States Postal Service ("USPS"). Jones alleges that the USPS declined to promote her because of her race, her color, and her sex. The matter is before the Court on defendant's motion for summary judgment under Fed. R. Civ. P. 56(a). Upon a careful review of the written submissions, the Court deems it appropriate to render its decision without a hearing pursuant to Local Rule 7.1(f)(2). For the reasons set forth below, defendant's motion for summary judgment is GRANTED.

## FACTUAL BACKGROUND

Richelle Jones is a Manager of Distribution Operations (MDO) at the defendant's Michigan Metroplex in Pontiac, Michigan. As an MDO, Jones manages the operations for one of the three shifts at the facility.  On the Postal Service's Executive and Administrative Schedule (EAS), an MDO is a level-24 position. During the events at issue in this case, Jones reported to the Senior Plant Manager of the Metroplex, Brian Fisher, and Fisher reported to the District Manager, Lee Thompson.[1]

In January of 2016, Fisher assigned Jones to a temporary detail as the Lead Senior MDO at the Metroplex. The Lead Senior MDO supervises the other MDOs and coordinates the activities of all three shifts. This is an EAS-level 26 position and is considered a "high level leadership role." In April of 2016, Jones applied for a job posting to permanently fill the Lead Senior MDO position. To do so, she had to withdraw from the detail.

The USPS formed a review committee to consider applicants and conduct interviews, but Fisher was ultimately responsible for selecting a candidate for the position. The committee, comprised of Patricia Dawson, Julia Sigg, and Steve Jarboe, interviewed Jones and James Launius, a white male. After these interviews, the committee determined that neither

---

[1] In 2018 Lee Thompson married and changed her last name to Johnson.

candidate was prepared to fill the position and reported this

recommendation to Fisher. The position was not filled, and the position was

cancelled on August 22, 2016.

In the meantime, Jones was being mentored and trained for an

executive-level position with the USPS. On June 10, 2016, Fisher approved

the nomination of Jones to become a part of the USPS's Corporate

Succession Planning (CSP) program. Thompson supported Jones's

nomination. The stated goal of the CSP program is "to identify and develop

. . . potential future leaders [to] assume executive manager positions as

these opportunities become available." (CSP Management Instruction, p.

1.) An employee must be in CSP for at least 90 days before they can be

selected to fill an executive manager position. *Id*., p. 11. When Fisher

approved Jones's CSP nomination, he deemed Jones to be ready "within 5

[Years]" to assume an executive-level position in "Talent Pool 4 - Plants."

(ECF No. 19-34, PageID.617).

Jones testified that she was in fact nominated to CSP in 2012. (Jones

dep., p. 98). In support, she attaches screen shots of a CSP Application

Access Summary showing approvals for a machine account on dates

ranging from January 18, 2012 to May 31, 2016. An email dated June 6,

2012, refers to a "CSP EXCEL Assessment Report" that Jones purportedly

completed as part of her CSP application. (ECF No. 19-30, PageID.602-608). While it appears that Jones had some connection with the CSP program in 2012, the exhibit does not show that Jones was nominated to CSP at that time. Rather, the evidence clearly supports a finding that Jones was nominated to CSP on June 10, 2016.

On August 17, 2016, USPS selected Ronald Morris for the position of Plant Manager for the Detroit Processing and Distribution Center (the "Detroit P&DC"). Jones alleges that she had expressed interest in being detailed to this position, which was not posted and therefore not subject to open applications. The USPS fills executive-level positions such as Plant Managers by considering qualified candidates in the CSP program. Morris had been in the CSP program since 2014 and was assessed as "ready now" to assume an executive position in "Talent Pool 4" when he was considered for the Detroit P&DC Plant Manager position. Morris had prior experience with USPS as the Operations Manager for the Detroit District, which carried an EAS level of 25, as well as a detail as the Detroit P&DC Plant Manager. In this latter position, Morris showed success by improving workplace safety and management-employee communication. Jones, newly nominated to the CSP program for manager positions, had not participated for the requisite 90 days at the time Morris was selected. Nor

was Jones assessed as "ready" to be placed in an executive position. Therefore, Jones was not considered to fill the Detroit P&DC Plant Manager position. (Lee Johnson Decl., ¶ 8).

In October 2016, Fisher assigned Timothy Robertson to a detail as the Lead Senior MDO at the Metroplex. This was a temporary assignment and therefore was not filled through a competitive application process. Robertson's regular position was Manager of Marketing, which is an EAS-level 25. Robertson had prior experience in plant operations, delivery, marketing, finance, and training, which made him well-suited for the Lead Senior MDO position. (Lee Johnson Decl., ¶ 15).

Jones contacted her EEO officer on August 22, 2016 and filed a formal complaint on November 29, 2016. Jones alleged that the Postal Service discriminated against her based on her race, color, and sex with respect to several discrete actions. Only three of those actions occurred within 45 days prior to her first contact with the EEO Office: (1) the August 17, 2016 selection of Ron Morris as Plant Manager of the Detroit P&DC, (2) the August 22, 2016 cancellation of the posting for a Lead Senior MDO position to which Jones applied in April of 2016, and (3) the October 2016 selection of Timothy Robertson to detail into the vacant Lead Senior MDO

position. Jones did not seek to amend her complaint to encompass any

later-occurring employment practices. (ECF No. 18-16, PageID.282).

Jones filed her complaint in this case on July 27, 2020. She alleges

that the USPS discriminated against her based on her race, color, and sex

by failing to promote her and subjected her to a hostile work environment.

<u>STANDARD FOR SUMMARY JUDGMENT</u>

Federal Rule of Civil Procedure 56(c) empowers the court to render

summary judgment "forthwith if the pleadings, depositions, answers to

interrogatories and admissions on file, together with the affidavits, if any,

show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law." *See Redding v. St.*

*Eward*, 241 F.3d 530, 532 (6th Cir. 2001).  The standard for determining

whether summary judgment is appropriate is "'whether the evidence

presents a sufficient disagreement to require submission to a jury or

whether it is so one-sided that one party must prevail as a matter of law.'"

*Amway Distributors Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390

(6th Cir. 2003) (*quoting Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-

52 (1986)). The evidence and all reasonable inferences must be construed

in the light most favorable to the non-moving party.  *Tolan v.* Cotton, 572

U.S. 650, 660 (2014); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986); *Redding*, 241 F.3d at 532 (6th Cir. 2001).

"[T]he mere existence of *some* alleged factual dispute between the parties

will not defeat an otherwise properly supported motion for summary

judgment; the requirement is that there be no *genuine* issue of *material*

fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986)

(emphasis in original); *see also National Satellite Sports, Inc. v. Eliadis,*

*Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

If the movant establishes by use of the material specified in Rule

56(c) that there is no genuine issue of material fact and that it is entitled to

judgment as a matter of law, the opposing party must come forward with

"specific facts showing that there is a genuine issue for trial."  *First Nat'l*

*Bank v. Cities Serv. Co.*, 391 U.S. 253, 270 (1968); *see also McLean v.*

*988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).  Mere allegations

or denials in the non-movant's pleadings will not meet this burden, nor will

a mere scintilla of evidence supporting the non-moving party.  *Anderson*,

477 U.S. at 248, 252.  Rather, there must be evidence on which a jury

could reasonably find for the non-movant.  *McLean*, 224 F.3d at 800 (*citing*

*Anderson*, 477 U.S. at 252).

ANALYSIS

I.      Exhaustion of Remedies

"The right to bring an action under Title VII regarding equal employment [opportunity] in the federal government is predicated upon the timely exhaustion of remedies, as set forth in [the EEOC regulations]." *Hunter v. Sec'y of the United States Army*, 565 F.3d 986, 993 (6th Cir. 2009). To properly exhaust a claim, an employee must "initiate contact with a[n] [EEO] Counselor within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (alterations in original) (quoting 29 C.F.R. § 1614.105(a)(1)).

Jones first contacted her EEO Counselor on August 22, 2016 and filed a formal complaint on November 29, 2016. While Jones alleges several discrete actions of discrimination by the USPS in her complaint, only three of those actions occurred within 45 days prior to her first contact with the EEO Office: (1) the August 17, 2016 selection of Ron Morris as Plant Manager of the Detroit P&DC rather than offering Jones the position or the opportunity to detail to that position, (2) the decision on August 22, 2016 not to hire Jones for a Lead Senior MDO position to which she had

applied, and (3) the October 21, 2016 selection of Timothy Robertson to detail into the vacant Lead Senior MDO position.

Jones asserts that the Court should apply equitable tolling to excuse the fact that she failed to timely challenge the Postal Service's selection of Brenda Orton for a Manager of In-Plant Support position in October of 2015. Equitable tolling is to be applied sparingly and typically applies when there are compelling reasons why a plaintiff did not have notice of the 45-day filing requirement. *See Puckett v. Tennessee Eastman Co.*, 889 F.2d 1481, 1488 (6th Cir. 1989). Here, Jones maintains that after she learned she was not selected for this position, Fisher told her that she would have an opportunity to be assigned to a Plant Manager detail. This statement by Fisher does not support equitable tolling. First, it does not expressly have anything to do with EEO rights or filing deadlines. Jones does not allege that Fisher told her not to file an EEO claim because or misled her regarding her right to do so. *See Steiner v. Henderson*, 354 F.3d 432, 436 (6th Cir. 2003) ("[e]vidence that an employer's affirmative misrepresentations misled or 'tricked' the plaintiff into missing a deadline can bear on the reasonableness of the plaintiff's ignorance of the time constraint."). Second, there is no suggestion that Fisher's statement was misleading and no evidence to support the conclusion that the selection of

Morris foreclosed Jones's opportunity to detail as Plant Manager at some point in the future. Equitable tolling is not applicable in this situation.

Jones next asks the Court to consider the repeated unlawful employment practices committed by USPS in the context of a hostile work environment claim. In her EEO complaint, Jones alleged that the USPS discriminated against her with respect to several discrete events, such as not promoting her and not selecting her for details. However, discrete employment decisions cannot form the basis of a hostile-work-environment claim. *See Taylor v. Donahoe*, 452 F. App'x 614, 619 (6th Cir. 2011) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). "Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify" and . . . "[e]ach incident of discrimination . . . constitutes a separate actionable 'unlawful employment practice'"). In contrast, "[a] hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Morgan*. at 117 (citing 42 U.S.C. § 2000e–5(e)(1)).

Allegations in an EEO complaint citing only discrete incidents of discrimination do not exhaust administrative remedies for an uncharged claim of hostile work environment "unless the allegations in the complaint can be reasonably inferred from the facts alleged in the charge." *Younis v.*

*Pinnacle Airlines, Inc.*, 610 F.3d 359, 362 (6th Cir. 2010) (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994)). Discrete acts that fall within the statutory period do not make those that fall outside the period timely. *Id*. This standard has replaced the continuing-violation theory. *Sherman v. Chrysler Corp.*, 47 F. App'x 716, 721 (6th Cir. 2002) (citing *Morgan* and concluding that a plaintiff who has failed to exhaust a claim regarding a discrete discriminatory act "cannot rely on a continuing violations theory").

"In order to establish a claim of hostile work environment . . . a plaintiff must present evidence of harassment that 'unreasonably interfer[es] with [his] work performance and creat[es] an objectively intimidating, hostile, or offensive work environment.'" *Younis*, 610 F.3d at 362 (6th Cir. 2010) (citing *Grace v. USCAR,* 521 F.3d 655, 678 (6th Cir.2008)). The EEO complaint in this case contains no allegations from which a hostile-work-environment claim could be reasonably inferred. The hostile work environment claim is therefore dismissed. *See Jones v. City of Franklin*, 309 F. App'x 938, 943–44 (6th Cir. 2009) (observing that "[n]o decision in this circuit has held that EEOC charges regarding discrete acts of discrimination are alone sufficient to put the EEOC on notice of a hostile-work-environment claim").

II.   Discrimination

Title VII prohibits an employer from discriminating against an individual "with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). A Title VII plaintiff can make a prima facie case of discrimination either by presenting direct evidence of discriminatory actions by the defendant or by showing the existence of circumstantial evidence that creates an inference of discrimination. *Younis*, 610 F.3d at 363. Title VII claims based on circumstantial evidence of discrimination are analyzed under the three-step framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

"To make out a prima facie case of discrimination in the failure-to-promote context, a plaintiff must show that: (1) she is a member of a protected class; (2) she was qualified for promotion; (3) she was 'considered for and denied the promotion'; and (4) 'other employees of similar qualification who were not members of the protected class received promotions.'" *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 584–85 (6th Cir. 2009). Once a prima facie case is established, the employer "must articulate a legitimate non-discriminatory reason" for the failure to promote. *Id*. at 585. If a legitimate reason is articulated, the burden shifts to the

plaintiff to establish the reason is pretext for discrimination. *Id*. at 586. "A

plaintiff may establish that an employer's stated reason for its employment

action was a pretext for discrimination by showing that the reason (1) had

no basis in fact, (2) did not actually motivate the challenged conduct, or (3)

is insufficient to explain the challenged conduct." *Id*. "The plaintiff must

produce 'sufficient evidence from which the jury could reasonably reject the

defendants' explanation and infer that the defendants intentionally

discriminated against him.'" *Id*.

   A. Selection of Morris as Plant Manager – August 17, 2016

Jones's first allegation of discrimination is based on the USPS

selecting Ronald Morris to be the Detroit P&DC Plant Manager on August

17, 2016 and not considering Jones for the position or the detail. The

USPS fills executive-level positions including Plant Managers from

employees who have been in the CSP program for at least 90 days. When

Morris was selected for the Plant Manager position on August 17, 2016,

Jones was not qualified for the position because she had not been in CSP

for 90 days. Furthermore, she was not deemed "ready" for a Plant Manager

position on that date. *See Wexler v. White's Fine Furniture, Inc.*, 317 F.3d

564, 575–76 (6th Cir. 2003) ("The prima facie burden of showing that a

plaintiff is qualified can . . . be met by presenting credible evidence that his

or her qualifications are at least equivalent to the minimum objective criteria required for employment in the relevant field."). Jones has failed to show she was qualified to be promoted to Plant Manager.

Even if Jones could state a prima facie case of discrimination, the USPS offered legitimate, nondiscriminatory reasons for selecting Ronald Morris based on his training and experience.  These reasons are outlined in the Statement of Fact section of this Opinion and Order, as well as in the announcement of Morris' appointment (ECF No. 18-9, PageID.251).

Finally, Jones cannot establish that the reasons given for hiring Morris were pretext for discrimination. Employers are "generally free to choose among qualified candidates" and "the law does not require [them] to make perfect decisions, nor forbid them from making decisions that others may disagree with." *Bender v. Hecht's Dept. Stores*, 455 F.3d 612, 626 (6th Cir. 2006) (quoting *Hartsel v. Keys*, 87 F.3d 795, 801 (6th Cir. 1996)). "Relative qualifications establish triable issues of fact as to pretext where the evidence shows that either (1) the plaintiff was a plainly superior candidate, such that no reasonable employer would have chosen the latter applicant over the former, or (2) plaintiff was as qualified as or better qualified than the successful applicant, and the record contains other

probative evidence of discrimination." *Provenzano v. LCI Holdings, Inc.*, 663 F.3d 806, 815 (6th Cir. 2011) (citations omitted).

While Jones may have had more in-plant experience than Morris, Morris's background in delivery and customer service was seen to be beneficial for promoting coordination between the plant and the individual Post Offices. Jones has not established that she was a "plainly superior candidate." She also cannot show she was "as qualified as or better qualified than" Morris. When Morris was selected as Plant Manager, he was in a Level-25 position as the Post Office Operations Manager for the Detroit District. At that time, Jones was a Level-24 MDO. Morris was named to the CSP program as "ready now" in 2014, whereas Jones was identified as "ready within 5 [years]" in 2016.

Finally, as "other probative evidence of discrimination," Jones points to a conversation that Thompson had with Jones regarding her facial expressions in August of 2016. According to Jones, Thompson took her aside after a meeting and told her that her "facial expressions could have a negative impact on [her] postal career." (Jones dep., p. 73.) Thompson testified that she saw Jones roll her eyes and shake her head during the meeting preceding the conversation, and that after the meeting she privately advised Jones to be more conscious of her facial expressions.

(Johnson Decl., ¶ 19.) Thompson initiated that conversation to mentor Jones, not to reprimand her. *Id*. Jones cannot explain how this conversation pertains to her race. She believed that the comments were racially motivated because of "[j]ust the way [Thompson] said it" and because Thompson chose to have the conversation in private with "no witnesses." (Jones dep., p. 77). The subjective perception that Thompson's comments were based on racial animus cannot establish pretext. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 584–85 (6th Cir. 1992) (concluding that the plaintiff could not establish pretext based on statements that were "subjective beliefs," which were "wholly insufficient evidence to establish a claim of discrimination as a matter of law"); *Briggs v. Potter*, 463 F.3d 507, 516 (6th Cir. 2006) (holding that a plaintiff's subjective beliefs regarding her "qualifications in relation to those of other applicants, without more, cannot sustain a claim of discrimination").

Jones does not state a prima facie case that she was discriminated against in violation of Title VII by USPS's selection of Morris as Plant Manager. Nor is Jones able to establish that USPS's proffered legitimate non-discriminatory reason for failing to promote Jones is pretext for discrimination.

B. <u>Cancellation of Lead Senior MDO Position – August 22, 2016</u>

Jones's second allegation of discrimination against her relates to the cancellation of the Lead Senior MDO posting which she applied for in April of 2016. Jones and James Launius, who is a white male, each interviewed for this position with a three-person review committee. The committee determined that neither Jones nor Launius was prepared for the position and communicated their recommendation to Brian Fisher. (Sigg dep., p. 41). Fisher decided not to fill the position at that time and to continue to assign employees to detail into the role.

As evidence of discrimination, Jones refers to her conversation with committee chairperson Patricia Dawson, who allegedly told Jones that "whatever we provided obviously [Fisher] didn't go with it because he didn't select anyone from the package." (Jones Decl., ¶ 4). This statement is hearsay and cannot be used to defeat a motion for summary judgment. Fed. R. Civ. P. 56(c)(4). Even if it could be considered, the statement does not establish that the review committee recommended that Jones be selected for the position, or even that the review committee recommended a candidate at all. The only other allegation Jones makes in support of discrimination is that Lee Thompson and Brian Fisher instructed the

- 17 -

committee not to recommend her for the position. When asked why she

believes this, Jones stated, "It's just what I think." (Jones dep., p. 67).

The Court finds that there is no evidence to support Jones's second

allegation of unlawful discrimination by USPS.

C. <u>Selection of Robinson for Lead Senior MDO Detail – October 2016</u>

Jones's third allegation of discrimination by USPS focuses on the

selection of Timothy Robertson to fill a temporary detail as Lead Senior

MDO in October of 2016. USPS states that they selected Robertson

because of his prior experience in plant operations, training, delivery,

marketing, and finance. (Johnson Decl., ¶ 15). Lee Thompson also

believed Robertson's "interpersonal management skills" made him well-

suited in Union-Management communications and management team

building, which were desirable traits for the position. *Id*.

Jones asserts that these reasons given by USPS for selecting

Robertson for the detail are a pretext for discrimination. However, the only

argument Jones makes in support of pretext is that Robertson was not

qualified for the detail because he "didn't want the job" and only accepted it

as a favor to Lee Thompson. These assertions do not mean that Robertson

was not qualified or that Jones herself was equally or more qualified. Fisher

and Thompson had assigned Jones to the same detail earlier in 2016. It is

not plausible, without some further evidence, that the same people who assigned Jones to a detail would then deny her the same detail based on her race, color or sex. *See Buhrmaster v. Overnite Transp. Co.*, 61 F.3d 461, 464 (6th Cir. 1995) ("An individual who is willing to hire and promote a person of a certain class is unlikely to fire them simply because they are a member of that class. This general principle applies regardless of whether the class is age, race, sex, or some other protected classification.").

Jones cannot support her claim that USPS discriminated against her when it assigned Robertson to a detail as Lead Senior MDO in October of 2016.

## CONCLUSION

Now, therefore, for the reasons stated in this opinion and order,

IT IS HEREBY ORDERED that defendant's motion for summary judgment (ECF No. 18) is GRANTED.

Dated:  September 3, 2021

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on September 3, 2021, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk